

# NUMBER 13-00-00296-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

OSCAR GONZALEZ, INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF
ENRIQUE GONZALEZ, ET AL.,          Appellants,

v.

MCALLEN MEDICAL CENTER, INC. AND
JOSE E. IGOA, M.D.,          Appellees.

---

On appeal from the 92nd  District Court of Hidalgo County, Texas.

---

# MEMORANDUM OPINION ON REMAND

**Before Justices Yañez, Rodriguez, and Dorsey[1]
Memorandum Opinion on Remand by Justice Yañez**

---

[1] Retired Justice J. Bonner Dorsey, who concluded his term of office on December 31, 2002, was assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).  Justice Dorsey did not participate in this memorandum opinion on remand. *See* TEX. R. APP. P. 41.1(c).

In this medical negligence case, a jury returned a take-nothing judgment against appellants[2] and in favor of appellees, McAllen Medical Center, Inc. ("the hospital) and Jose E. Igoa, M.D.  On remand, we affirm.

## I. Procedural Background

Appellants appealed the trial court's rejection of their claims.  By six issues, they challenged the factual sufficiency of the jury's liability findings, and by a seventh issue, the legal sufficiency of the jury's finding that the decedent, Enrique Gonzalez, did not suffer a serious, permanent, and disabling injury.  In a memorandum opinion, this Court rejected appellants' sufficiency challenges and affirmed the trial court's judgment.[3]

Appellants appealed to the Texas Supreme Court.  The supreme court acknowledged that if a court of appeals *affirms* a challenged jury verdict as being supported by factually sufficient evidence—as this Court did—the court need not detail all the evidence in support of the verdict.[4]  Nonetheless, the supreme court found that appellants were "entitled to more" than this Court's "conclusory" opinion, and reversed and remanded, with instructions that we should "stat[e] why the jury's verdict can or cannot be set aside."[5]  Accordingly, we proceed to explain the "basic reasons" for our decision.[6]

---

[2] Appellants are Oscar Gonzalez (individually and on behalf of the estate of Enrique Gonzalez, deceased), Emma Gonzalez, Enrique Gonzalez, Jr., Armando Gonzalez, Ricardo Gonzalez, and Hector Gonzalez.

[3] *Gonzalez v. McAllen Med. Ctr., Inc.*, No. 13-00-296-CV, 2003 Tex. App. LEXIS 4732, at *7-8 (Tex. App.–Corpus Christi June 5, 2003) (mem. op.), *rev'd and remanded*, 195 S.W.3d 680 (Tex. 2006) (per curiam).

[4] *Gonzalez*, 195 S.W.3d at 681; *see In re Columbia Med. Ctr. of Las Colinas*, 52 Tex. Sup. Ct. J. 1016, 2009 Tex. LEXIS 476, at *16 (Tex. July 3, 2009) (orig. proceeding).

[5] *Gonzalez*, 195 S.W.3d at 681-82.

[6] *See* TEX. R. APP. P. 47.4; *Gonzalez*, 195 S.W.3d at 681 (noting that "a memorandum opinion generally should focus on the basic reasons why the law applied to the facts leads to the court's decision.").

## II. Standards of Review

When reviewing a challenge to the legal sufficiency of the evidence, we "view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence if reasonable jurors could not."[7] The test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to reach the judgment being reviewed.[8]

In reviewing factual sufficiency, we must weigh all of the evidence in the record.[9] Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.[10]

## III. Discussion

### A. Negligence

By their first issue, appellants challenge the factual sufficiency of the evidence supporting the jury's negative findings as to the liability of the hospital and Dr. Igoa. Specifically, as to the hospital and Dr. Igoa, the jury answered "no" to the following question: "Did the negligence, if any, of Defendants, or one of them, constitute a proximate cause of the occurrence in question?" In several sub-issues, appellants argue that appellees were negligent in: (1) admitting Gonzalez to the hospital because the hospital had exceeded its patient limit; (2) admitting Alberto Padilla, who had a history of violence as a patient; (3) transferring Gonzalez to the locked unit of the hospital; (4) failing to protect

---

[7] *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005); *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 748 (Tex. App.–Corpus Christi 2006, pet. denied).

[8] *City of Keller*, 168 S.W.3d at 827-28.

[9] *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

[10] *Id.*

Gonzalez by providing treatment to Padilla in a separate environment; and (5) failing to adequately treat Gonzalez after he was beaten by Padilla.

The four elements of a medical negligence cause of action are: (1) a legally cognizable duty requiring conformity to a particular standard of care; (2) a failure to conform to the required standard; (3) actual injury; and (4) a reasonably close causal connection between the conduct and the alleged harm.[11]

The jury heard evidence that at the time of the incident, the hospital had three additional patients over its limit, but had additional staff available to take care of the extra patients. Padilla was transferred to the hospital from a nursing home because his psychiatric condition was severe and hospitalization allowed for better treatment and monitoring of his condition. With regard to Gonzalez's transfer to the locked unit of the hospital, a nurse testified that Gonzalez appeared to be disoriented and confused, and that he attempted several times to leave the hospital; he was transferred to the locked unit because of concern for his safety. As to appellants' claim that Padilla should have been treated separately, the jury heard evidence that (1) Padilla's symptoms did not justify segregating him from other patients; (2) nurses observed Padilla sitting quietly in his room a few minutes before the incident; (3) nurses observed Gonzalez and Padilla at fifteen-minute intervals before the incident; and (4) Padilla had shown no signs of aggression while at the hospital. As to Gonzalez's post-injury care, the jury heard evidence that after the incident, Dr. Igoa asked a trauma specialist to assess Gonzalez's condition; Gonzalez's treatment was assumed by the trauma specialist and two internal medicine

---

[11] *Flores v. Ctr. for Spinal Evaluation & Rehab.*, 865 S.W.2d 261, 264 (Tex. App.–Amarillo 1993, no writ); *see also Doege v. Sid Peterson Mem. Hosp.,* No. 04-04-570-CV, 2005 Tex. App. LEXIS 4964, at *6 (Tex. App.–San Antonio June 29, 2005, pet. denied) (mem. op.).

4

specialists. With regard to proximate causation, we conclude the jury heard evidence that Padilla's actions were not foreseeable. We hold there was sufficient evidence to support the jury's negative findings as to appellees' negligence and proximate causation. We overrule appellants' first issue.

## B. Premises Defect

By their second issue, appellants contend the evidence was factually insufficient to support the jury's finding that the hospital was not negligent with respect to a premises defect. Appellants' "defect" claim was based on allegations that the hospital was overcrowded, had inadequate facilities, no security, and that it allowed Padilla on the premises.

When a party is an invitee, the elements of a premises liability claim are: (1) actual or constructive knowledge of a condition on the premises by the owner or occupier; (2) the condition posed an unreasonable risk of harm; (3) the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) the owner or occupier's failure to use such care proximately caused the plaintiff's injury.[12] As noted, there was evidence that: (1) the number of hospital staff exceeded any regulatory requirements; (2) Padilla and Gonzalez were being observed at fifteen-minute intervals; (3) hospital security would not have prevented the incident; and (4) Padilla's symptoms did not justify any further restraint. We hold there was factually sufficient evidence to support the jury's finding that the hospital was not negligent with respect to a premises defect.

---

[12] *See Doege,* 2005 Tex. App. LEXIS 4964, at *25 (citing *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99-100 (Tex. 2000); *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998); *Star Enterprise v. Marze*, 61 S.W.3d 449, 461 (Tex. App.–San Antonio 2001, pet. denied)).

## C. Negligence *Per Se*

By their third issue, appellants challenge the jury's negative finding on question three, which was based on allegations that the hospital was negligent *per se*. Question three asked whether the hospital was negligent by exceeding its patient limit, failing to have adequate seclusion and treatment rooms, and failing to provide Gonzalez with all rights under the Patient Bill of Rights,[13] and whether such negligence proximately caused the incident.

"Negligence per se is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person."[14] Generally, the litigant alleging negligence per se as a ground of recovery must assume the burden of proving a statutory violation.[15] A typical charge first asks whether the alleged tortfeasor actually violated the statute in question, and secondly, whether the violation proximately caused the accident to occur.[16]

We have determined that there was factually sufficient evidence to support a conclusion that the hospital's patient overload did not proximately cause the incident because there was adequate staff to deal with the extra patients. The hospital had a room available for intensive treatment, but Padilla's symptoms did not justify using the intensive treatment room. Similarly, the hospital had a seclusion room available, but Padilla's symptoms did not justify placing him in seclusion. We hold there was factually sufficient

---

[13] Appellants' claim that overwhelming evidence supports the assertion that the hospital and Dr. Igoa violated the Patient Bill of Rights is addressed in appellants' fifth issue.

[14] *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979).

[15] *Moughon v. Wolf*, 576 S.W.2d 603, 604 (Tex. 1978).

[16] *Id.*

6

evidence to support the jury's finding that the hospital's alleged deficiencies did not constitute negligence that proximately caused the incident. We overrule appellants' third issue.

### D. Informed Consent

By their fourth issue, appellants challenge the jury's finding that the hospital and Dr. Igoa did not fail to obtain Gonzalez's informed consent regarding the risks incident to treatment in the locked unit of the hospital.

In Texas, the duty to obtain informed consent is a nondelegable duty imposed solely upon the treating doctor.[17] An action alleging a physician's failure to obtain a patient's informed consent is a suit based on negligence.[18] Traditional notions of liability in negligence actions require a finding of a duty, a breach of that duty, the breach was a proximate cause of injuries, and that damages occurred.[19] The inquiry must be whether a reasonable person, not a particular plaintiff, would have consented to the treatment or procedure had he been fully informed of all inherent risks which would influence his decision.[20] Only in this way may a plaintiff establish that the failure to obtain informed consent was a proximate cause of his injuries.[21]

A nurse testified that prior to the incident, she told a member of Gonzalez's family that Gonzalez had been moved to the secure unit because he seemed confused and had

---

[17] *Espalin v. Childrens Med. Ctr.*, 27 S.W.3d 675, 686 (Tex. App.–Dallas 2000, no pet.).

[18] *McKinley v. Stripling*, 763 S.W.2d 407, 409 (Tex. 1989).

[19] *Id.*

[20] *Id.* at 410.

[21] *Id.*

7

been wandering around attempting to leave the hospital. Appellants point to no evidence showing that under these circumstances, a reasonable person would have refused to be transferred to the secure unit. We conclude that the jury's negative finding regarding the lack of informed consent was not against the great weight and preponderance of the evidence. We overrule appellants' fourth issue.

### E. Patient's Bill of Rights

By their fifth issue, appellants challenge the jury's negative answer to the following question: "Did Defendants, or one of them, fail to comply with the Patient's Bill of Rights and was such failure was [sic] a proximate cause of the occurrence in question?" Appellants contend the following patient rights of Gonzalez were violated: (1) the right to be "protected from harm"; (2) the right to receive treatment in the least restrictive manner available; and (3) the right to be protected from mistreatment, abuse, neglect, and exploitation.[22] As discussed above, the jury heard evidence that Gonzalez was moved to the locked unit for his own safety and that the locked unit of the hospital was the least restrictive treatment setting. Appellants have identified no evidence that any of the decisions regarding Gonzalez's treatment proximately caused the incident. We overrule appellants' fifth issue.

### F. Ostensible Agent

By their sixth issue, appellants challenge the jury's finding that Dr. Igoa was not an ostensible agent of the hospital. Over the hospital's objection, the jury was asked to

---

[22] Although appellants do not identify the statute, Texas has enacted a Patient Bill of Rights. *See* TEX. HEALTH & SAFETY CODE ANN. § 321.002 (Vernon 2001). Section 321.002 requires that the Texas Department of Mental Health and Mental Retardation and the Texas Commission on Alcohol and Drug Abuse "protect the health, safety, and rights of a patient receiving voluntary or involuntary mental health, chemical dependency, or comprehensive medical rehabilitation services in an inpatient facility." *Id.* § 321.002(a).

determine whether Dr. Igoa was an agent of the hospital. We agree with the hospital that this issue is moot; the existence of an agency relationship is relevant only as to whether the hospital may be held vicariously liable for any wrongdoing by Dr. Igoa. The jury, however, found that Dr. Igoa was not found liable under any theory of recovery. We overrule appellants' sixth issue.

### G. Gonzalez's Injury

By their seventh issue, appellants challenge the legal sufficiency of the jury's negative answer to the following question: "Was the physical injury to Mr. Enrique Gonzalez a serious, permanent, and disabling injury?" Appellants contend that the evidence establishes as a matter of law that Gonzalez's injuries were serious, permanent, and disabling. There was evidence that Gonzalez recovered from his hip fracture, was improving, and was able to walk short distances. The jury heard evidence that the deterioration of his health was due to other conditions, including advanced Alzheimer's disease, pneumonia, infections, and heart disease. We conclude there was evidence to support the jury's finding that Gonzalez did not suffer a permanent or disabling injury due to the incident. We overrule appellants' seventh issue.

### Conclusion

Having overruled appellants' issues, we affirm the trial court's judgment.

                                               _____

LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion on Remand delivered and
filed this the 29th day of October, 2009.

9